IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.:        4:15cr43/AW/CAS
                                                         4:19cv62/AW/CAS

JOSEPH-MICHAEL ELIAS MCFARLAND,
    Defendant.

_____

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant's Motion to Vacate,
Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and supporting
memorandum of law.   (ECF Nos. 129, 132.)   The Government has filed a
response in opposition and Defendant filed a reply.   (ECF Nos. 136, 139.)
The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive
matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed.
R. Civ. P. 72(b).   After a review of the record, the court recommends that
Defendant's § 2255 motion be denied without an evidentiary hearing.   *See*
Rules Governing Section 2255 Cases 8(a) and (b).

## I.    BACKGROUND

On October 6, 2015, Joseph-Michael Elias McFarland was charged in a three-count indictment with sex trafficking of a minor in violation of 18 U.S.C. § § 1591(a)(1) & (b)(2) ("Count One"), two counts of distribution of a-Pyrrolidinovalerophenone in violation of 21 U.S.C. §§ 841(a)(1)( & (b)(1)(C) ("Counts Two and Three").   (ECF No. 1).   The basis for the offense conduct was McFarland's alleged "pimping" of a 16-year old girl, J.W., which was discovered during his sales of drugs to a confidential source.   (ECF No. 104, PSR ¶¶ 7-17.)   McFarland retained Lucas Taylor, Esq. to represent him.

On two separate occasions, in December of 2015, and in January of 2016, a change of plea hearing was scheduled, but McFarland decided to proceed to trial.   (*See* ECF Nos. 25, 29, 32; *see also* ECF No. 99 at 14-15, 38-40).

On February 2, 2016, McFarland was charged in a four-count superseding indictment which added a single count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Four").   (ECF No. 37.)   If convicted of this

charge, McFarland would be subject to a consecutive mandatory sentence of five years.

On May 9, 2016, after the jury was selected, McFarland pleaded guilty to Counts One through Three of the indictment pursuant to a written plea agreement, in exchange for which the Government agreed to move to dismiss Count Four.   (ECF Nos. 67-69, 81.)   During the thorough plea colloquy, the court warned McFarland that his answers could be used against him if he tried to challenge the plea.   (ECF No. 81 at 17-18.)   He expressed no complaints about counsel, assured the court he had not been coerced to enter the plea, confirmed his understanding of the charges against him, including the fact that he faced a ten-year mandatory minimum sentence on Count One.

There are a number of means of violating 18 U.S.C. § 1591(a)(1). The statute provides that it is unlawful to "recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize and solicit" an individual who has not attained the age of 18 years and who would be caused to engage in a commercial sex act.   McFarland clarified that he admitted only to commission of the offense of "harboring" the minor, rather than any of the other provisions.   (ECF No. 81 at 47-49.)   He also admitted that he

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

communicated with others about J.W. through the internet and a cell

phone, knowing that J.W. was going to engage in a sex act for money.   (*Id.*

at 51.)

A draft Presentence Investigation Report was prepared on June 24,

2016.   (ECF No. 71.)   It calculated the advisory guidelines range at 151 to

188 months.

Although McFarland was still represented by retained counsel, on

September 22, 2016, he filed a pro se motion to withdraw his guilty plea,

claiming Taylor had provided deficient representation.   (ECF No. 78.)   He

asserted that Taylor withheld favorable evidence from him (Facebook

emails from the alleged victim, J.W., stating that he had trafficked her), that

Taylor had refused to move to suppress the gun, that Taylor had not met

with him since he entered his plea, and that McFarland had obtained new

evidence (a "deposition" from the victim saying McFarland did not commit

the crime).   Shortly thereafter, Taylor moved to withdraw, citing a conflict

of interest based on the allegations in McFarland's motion.   (ECF No. 80.)

The court held a hearing on September 29, 2016, at which it denied

McFarland's pro se motion to withdraw his guilty plea without prejudice,

granted Taylor's motion to withdraw, and appointed attorney Richard

Greenberg, Esq., to represent McFarland.    (ECF Nos. 84, 85, 87[1].)

McFarland, through his new attorney, filed another motion to

withdraw his guilty plea on October 18, 2016.    (ECF No. 88.)    In this

motion, he additionally asserted that he was denied the "close assistance

of counsel" before entering his guilty plea, that he "may have been

somewhat coerced into his plea," and that he did not truly know and

understand the consequences of the plea.    (ECF No. 88.)    The

Government responded in opposition (ECF No. 94), and the court held a

hearing on the motion on November 2, 2016.    (ECF No. 99.)

At the hearing, McFarland testified that his attorney had misled him

about his parents' opinion about entering a guilty plea, and their opinion

was key to his decision to plead guilty.    (ECF No. 99 at 6.)    He admitted

that he learned of counsel's allegedly false statements on the same day he

entered his plea.    McFarland also claimed that he did not understand he

would serve "every single day" of the ten-year sentence, but rather he

---

[1] The transcripts at ECF No. 85 and 87 are identical.

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

expected to serve about seven years after factoring in good-time credit, time served, and possibly credit for the drug program.   (*Id.* at 9.)

Attorney Taylor testified that he had told McFarland neither that his parents wanted him to plead guilty nor that McFarland could get any sentence less than ten years.   Rather, he had accurately conveyed that McFarland's parents said the decision whether to enter a plea was up to him, but he should listen to the advice of his lawyer, and McFarland could only get a sentence below the ten-year minimum mandatory by providing substantial assistance to the Government.   Taylor also testified he and McFarland had discussed "several times" the Facebook messages between McFarland's sister and J.W., as well as Taylor's phone conversation with J.W.

The district court denied the motion to withdraw the guilty plea. (ECF No. 99 at 64-71.)   It found Taylor did not falsely tell McFarland that his parents wanted him to enter a plea, noting that it strained credulity to find that this claim, that was the "centerpiece of his motion," had not been mentioned in either of the written submissions.   The court also credited Taylor's testimony about sentencing expectations, rejecting McFarland's assertion that Taylor told him he was going to be out in seven and a half

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

years.   The court opined that McFarland's motion was based on "buyer's remorse" about his decision to plead guilty due to a "degrading of the relationship between" client and counsel, who had less contact after the plea was entered.   The court found that any breakdown in communication after the plea did not prove McFarland was denied "close assistance of counsel" before the plea.   Neither attorney requested any further clarification of the court's findings of fact or conclusions of law.   (*Id.* at 71.)

The second final Presentence Investigation Report yielded the same advisory guidelines range of 151 to 188 months.   (ECF No. 104.) McFarland's offense level included a two-level obstruction of justice enhancement because he denied material facts relating to the offense during his presentence interview, and, despite his guilty plea, it did not include an acceptance of responsibility adjustment.

At sentencing, McFarland addressed the court at length.   (ECF No. 118 at 21-24.)   He asked that it reconsider its order denying his motion to withdraw his guilty plea, citing the alleged victim's statements that she had not been trafficked.[2]   His attorney noted that J.W.'s whereabouts were

---

[2] The court did not treat McFarland's statement as a formal motion for reconsideration since he was represented by counsel. (ECF No. 118 at 26.)   Mr. Greenberg noted that

unknown at that time, and there was evidence she may have been a
runaway, although he conceded that this did not preclude a finding that
McFarland had violated the law as charged.   The court made a factual
finding that McFarland was doing more than merely "harboring" J.W., and
that he was "actively facilitating the prostitution" of J.W.   (*Id.* at 51-52.)   It
also noted McFarland's obstructive conduct and failure to accept
responsibility for his actions had led to a higher guidelines range.   After
reviewing mitigating and aggravating factors, the court sentenced him to a
below-guidelines sentence of 132 months' imprisonment on each count,
with the terms to run concurrently.   (*Id.* at 55-59; ECF Nos. 109-110.)

On appeal, McFarland argued that the district court abused its
discretion by denying his motion to withdraw his guilty plea, and he
challenged the substantive reasonableness of his sentence.   (ECF No.
124.)   The Eleventh Circuit affirmed.   It found McFarland had not shown
either a fair and just reason to withdraw his guilty plea or that the plea was
unknowing or involuntary due to counsel's alleged ineffectiveness.[3]   The

the men had discussed the potential of filing a motion for reconsideration but counsel
determined there were no grounds to do so.   (*Id.* at 27.)

[3] Typically, a court will not review an ineffective assistance of counsel claim on direct
appeal.   In this case, the court found that the record was sufficiently developed for

court further found that McFarland's below guidelines sentence was not
substantively unreasonable.

McFarland timely filed the instant § 2255 motion, through counsel, on
January 29, 2019.   The Government opposes the motion in its entirety.

## II.    ANALYSIS

A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in
conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132,
1138 (11th Cir. 2014).   A prisoner is entitled to relief under section 2255 if
the court imposed a sentence that (1) violated the Constitution or laws of
the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum
authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28
U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th
Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions
of constitutional rights and for that narrow compass of other injury that
could not have been raised in direct appeal and would, if condoned, result

---

appellate review.   (ECF No. 124 at 11, n. 4)

in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d
1225, 1232 (11th Cir. 2004) (citations omitted).

   The law is well established that a district court need not reconsider
issues raised in a section 2255 motion which have been resolved on direct
appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014);
*United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).   Because a
motion to vacate under section 2255 is not a substitute for direct appeal,
issues which could have been raised on direct appeal are generally not
actionable in a section 2255 motion and will be considered procedurally
barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S.
614, 621 (1998); *McKay*, 657 F.3d at 1195.

   Ineffective assistance of counsel claims generally are not cognizable
on direct appeal and are properly raised by a § 2255 motion regardless of
whether they could have been brought on direct appeal.   *Massaro v.
United States*, 538 U.S. 500, 503 (2003); *see also United States v. Campo*,
840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional
claim of ineffective assistance of counsel, a defendant must demonstrate
both that counsel's performance was below an objective and reasonable
professional norm and that he was prejudiced by this inadequacy.

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    *Strickland*'s two-part test also applies to guilty pleas.    *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).    A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.    *Id.* at 163 (quoting *Hill*, 474 U.S. at 59).    A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."    *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at

688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Id.* at 1316, n.18.

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*,

431 U.S. 63, 74 (1977)).    Furthermore, counsel is not constitutionally

deficient for failing to preserve or argue a meritless claim.    *Denson v.*

*United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v.*

*Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).

  Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at

1313.    This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams*

*v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory."    *United States v.*

*Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

B. <u>Evidence in support of motion to withdraw plea</u>

McFarland first asserts that appointed counsel Greenberg was constitutionally ineffective because Greenberg did not assist McFarland in meeting his burden of proving he was entitled to withdraw his plea, despite having been provided with information that would have allowed him to do so.   (ECF No. 132 at 12.)

McFarland claims that before the hearing he presented Greenberg with an affidavit from his classification officer at the Tallahassee Correctional Institution, David Arnold.   Arnold's affidavit, which is not part of the record, highlighted the alleged lack of communication between McFarland and Attorney Taylor and stated that the officer would be willing to testify.   Greenberg did not call Arnold as a witness, although

McFarland's credibility was a focal point of the hearing and, McFarland claims, Arnold's expected testimony would have supported his position. He paraphrases the affidavit as stating that "Taylor had not been to visit the Petitioner at the facility, nor had he set up any way to communicate with the Petitioner after the Petitioner entered his plea."    (ECF No. 132 at 13.)    The thrust of the affidavit is that there was a breakdown in communication <u>after</u> McFarland entered his plea.    (*See* ECF No. 139 at 3.)    Presentation of this evidence would not have changed the outcome of the proceedings.    In denying McFarland's motion, the district court stated:

> The fact that there may have been a breakdown in communication after the [entry of the plea] does not – is not determinative of the issue; and I find the fact they had loss (sic) contact after the plea doesn't in any way undermine Mr. Taylor's testimony that they had met a dozen times and gone over the evidence.

(ECF No. 99 at 69.)

McFarland argues in his reply that the district court's reliance on the length of time it took for him to come forward with his allegations in support of his motion to withdraw the plea shows how the lack of post-plea communication was relevant.    The record does not support this assertion. McFarland has shown neither that no reasonable attorney would have

chosen not to present Arnold's testimony nor that the outcome of the proceedings would have been different if it had been presented.   He has not met his burden and no relief is warranted on this claim.


C. Investigation of Government's witness before guilty plea

McFarland next contends that attorney Taylor was constitutionally ineffective because he did not fully investigate the "testimony" of victim J.W., before allowing him to enter a plea.   The thrust of his argument appears to be that J.W.'s testimony would have established his innocence, and if Taylor had investigated, he would not have pleaded guilty.

Among the duties owed by minimally competent counsel is the duty to make reasonable investigations or to make a reasonable decision that makes said investigations unnecessary.   *Strickland,* 466 U.S. at 690-91. However, a claim that counsel failed to investigate is typically foreclosed by a guilty plea.   Once a plea becomes final, absent a jurisdictional challenge, a petitioner may generally only challenge the knowing and voluntary nature of the plea.   *See United States v. Broce*, 488 U.S. 563, 574 (1989).   In this case, even if McFarland's claim is not foreclosed, he has not shown that it has merit.

First, McFarland's position that he believes counsel "failed to investigate" is contradicted by his sworn testimony at the plea proceeding. He assured the court he was pleased with counsel's representation, he had no complaints at all, and there was nothing he needed to make the court aware of with respect to counsel's performance.   (ECF No. 81 at 14, 54.) He also stated he understood that he was giving up any defenses to the charges and the right to challenge his guilt or innocence.   (*Id.* at 28-29.) A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.   *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*).   This is because solemn declarations made under oath in open court carry a strong presumption of verity.   *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,* 767 F. 3d at 1216 (citing *Blackledge*). During the hearing on his motion to withdraw his guilty plea, McFarland offered the explanation that his "lies" to the court were a result of his being "scared" and wanting to get the proceeding over with.   (ECF No. 99 at 19-20.)   Regardless of the statements made during the plea colloquy, he cannot show prejudice.

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

McFarland now contends that after he entered his guilty plea, J.W. sent investigator Jerry Rivera an email in which she insisted that McFarland was not engaged in sex trafficking.   (ECF No. 132 at 17.)   In a follow-up email J.W. denied that she had been involved in prostitution or illegal conduct.   (*Id.* at 18.)   He seems to suggest that had he known this, he would not have entered a guilty plea.   However, both Taylor and McFarland were aware, well before then, that J.W. had said McFarland was innocent of the sex trafficking charges.

In December of 2015, months before McFarland entered his plea, J.W. sent McFarland's sister a Facebook message saying essentially the same thing.   (ECF No. 94-2 at 2.)   McFarland's sister copied the message thread and sent it to McFarland, and his family also provided the message to counsel, who then discussed it several times with his client.   (ECF No. 99 at 46-47; ECF No. 78.)   Taylor testified at the hearing on the motion to withdraw guilty plea that he had a telephone conversation with J.W. as well, although he did not reveal the substance of the conversation or any conclusions he reached as a result.   McFarland was aware of this conversation at the time he filed his pro se motion to withdraw his plea. (ECF No. 78.)

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

There are two problems with J.W.'s apparently straightforward denials that McFarland was engaged in criminal conduct. First, it is not clear that J.W., who was still a teenager at the time, understood the nuances of what is prohibited by the "sex trafficking" statute. Her willingness to engage in prostitution would not necessarily relieve McFarland from criminal liability.

Second, J.W.'s denials of her or McFarland's involvement in prostitution are not credible given other evidence in the case. For instance, J.W. was recorded on tape by the confidential source ("C.S.") in a conversation about prostitution saying "He talks prices, I talk pleasure" (referring to McFarland). (*See* ECF No. 118 at 40; ECF No. 104, PSR ¶ 11.) McFarland sent suggestive photos of J.W. to the C.S., asking if the C.S. would be able to find clients for the prostitution of J.W. The C.S. engaged in a four-minute controlled recorded phone call with McFarland to negotiate a weekend deal with the C.S.'s client for J.W. Finally, McFarland's cell phone contained other text messages pertaining to the prostitution of a "white girl." (PSR ¶¶ 10-12, 14.) J.W. may not have known about the conversations between McFarland and the C.S., but these facts support McFarland's admission under oath that he "harbored J.W.

and communicated with others about J.W. through the internet and with a cell phone knowing that J.W. was going to sell herself for money, that is engage in a sex act for money."   (ECF No. 81 at 51.)

In sum, McFarland knew before entering his plea that J.W. had made "exculpatory" statements, yet he chose to enter the guilty plea.   Based on the record evidence, it is not clear that further investigation would have changed the outcome of this case.   McFarland has not suggested what additional evidence Taylor could or should have uncovered that would have changed his decision to plead guilty.   Therefore, he has not established that Taylor's performance was constitutionally deficient.

McFarland also claims Attorney Greenberg should have investigated J.W. and called her as a witness once he became counsel of record. (ECF No. 132 at 19.)   Even if J.W. had been called as a witness at the hearing on the motion to withdraw plea, her testimony at the hearing would have presented the same problems discussed above and would not have changed the outcome of the proceedings.   The court cannot find McFarland was prejudiced by Greenberg's failure to call J.W. as a witness, and he is not entitled to relief.

D. Trial counsel did not investigate the facts surrounding Count Four

McFarland was charged in Count Four of the indictment with knowingly possessing a firearm in furtherance of the drug trafficking crimes charged in Counts Two and Three.   He now claims that before entering his plea he told counsel to investigate whether it was possible that the gun he was charged with possessing had been made in Miami rather than somewhere outside the state.   If counsel had investigated, McFarland claims, counsel "would have never allowed the Petitioner to enter a guilty plea to said count."   (ECF No. 132 at 23.)     He proceeds to argue why the Government could not factually prove the elements of this crime, and states if counsel had done a proper investigation he would have gone to trial because the 924(c) charge tacked on a mandatory five-year consecutive sentence" or he "would have challenged that conviction and sentence." (*id.* at 25-26.)   As noted above, McFarland did not plead guilty to Count Four. This count was dismissed by the Government in exchange for his guilty plea.   Furthermore, a violation of § 924(c) does not require proof of movement through interstate commerce.   McFarland's argument is frivolous.

In his reply, McFarland asserts, for the first time, that counsel's failure to investigate this count was one of the reasons he felt he had to take a guilty plea, because he was afraid of receiving a consecutive sentence. (ECF No. 139 at 9.)   McFarland had ample opportunity to bring counsel's alleged failure to investigate to the court's attention at the plea colloquy and the hearing on his motion to withdraw his plea.   The fact that the revolver neither appeared in the undercover videos obtained by the C.S. during the drug buy nor was located during the search of the premises does not eviscerate the Government's case as to this count.   The C.S. would have testified that McFarland possessed the revolver during the second drug transaction; there were videos on McFarland's cell phone depicting him holding a black revolver; and there were text messages on his phone indicating he had given the revolver to another individual after the sale to the C.S. and before the execution of the warrant.   (ECF No. 104, PSR ¶¶ 11, 12, 16, 17.)   Based on that evidence, a jury could have convicted McFarland of Count Four.   McFarland has not shown that an investigation would have revealed relevant exculpatory evidence, and he has not established that Taylor's performance was constitutionally deficient under *Strickland.*

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

### III.    <u>CONCLUSION</u>

An evidentiary hearing is not necessary to resolve McFarland's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.    For the foregoing reasons, the court finds that McFarland has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, his motion should be denied in its entirety.

### IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

Case Nos.: 4:15cr43/AW/CAS; 4:19cv62/AW/CAS

473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 129) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 18th day of March, 2020.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> **A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.